# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Justin Jones, ) | Civil Action No. 3:15-cv-04236-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Eaton Corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Justin Jones ("Jones" or "Plaintiff") filed this action against his former employer, Defendant Eaton Corporation ("Defendant" or "Eaton"), alleging that he was subjected to gender discrimination by sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17. (ECF No. 1-1 at 9 ¶ 33–11 ¶ 50.)

This matter is before the court on Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (ECF No. 36) and Motion to Dismiss for Spoliation of Evidence, or alternatively, for Other Appropriate Sanctions ("Spoliation Motion") (ECF No. 37). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to United States Magistrate Judge Kaymani D. West for pretrial handling. On February 9, 2017, the Magistrate Judge issued a Report and Recommendation (ECF No. 57) in which she recommended that the court grant Defendant's Rule[1] 56 Motion and dismiss as moot its Spoliation Motion. (Id. at 44.) Plaintiff filed Objections to the Magistrate Judge's Report and Recommendation, which Objections are presently before the court. (ECF No. 59.) For the reasons set forth below, the court **ACCEPTS** the Magistrate Judge's recommendation

---

[1] The court observes that "rule" refers to the Federal Rules of Civil Procedure.

and **GRANTS** Defendant's Motion for Summary Judgment and **DENIES AS MOOT** Defendant's Spoliation Motion.

## I.     RELEVANT BACKGROUND OF THE MATTER

The facts of this matter are discussed in the Report and Recommendation. (ECF No. 57.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein additional facts viewed in the light most favorable to Plaintiff that are pertinent to the analysis of his claims.

Defendant is "a power management company" that provides its customers with energy-efficient solutions to "effectively manage electrical, hydraulic and mechanical power more efficiently, safely and sustainably." Eaton, http://www.eaton.com/Eaton/OurCompany/AboutUs/index.htm (last visited Mar. 30, 2017). At its Sumter, South Carolina plant, Defendant manufactures "low voltage panelboards and switchboards for commercial and industrial applications." Id. at http://www.eaton.com/Eaton/OurCompany/NewsEvents/NewsReleases/PCT_1651964 (last visited Mar. 30, 2017).

Plaintiff began working for Defendant as an intern at its Sumter plant in June 2011. (ECF No. 37-2 at 28.) During his internship, Plaintiff was mentored by Kelvin McGraw ("McGraw"), Defendant's technical services manager. (Id. at 28–29.) However, starting in December 2011, McGraw began sending nude pictures to Plaintiff and asking for nude pictures from him. (Id. at 29–30.)

On May 7, 2012, Defendant hired Plaintiff as a switchboard technician. (ECF No. 36-2 at 2:12–21.) The primary function or purpose of a switchboard technician is to "[a]ccurately interpret customer supplied drawings, specifications and notes and translate them into drawings

and bills-of-materials for internal customers in Manufacturing and Purchasing, as well as external customers." (ECF No. 36-2 at 68.) As a switchboard technician, Plaintiff's direct supervisor was McGraw. (ECF No. 36-3 at 1 ¶ 3.) McGraw reported to Steve Catoe, the front end and supply chain manager. (ECF No. 36-2 at 11:15–18; see also ECF No. 36-4 at 1 ¶ 1.)

On June 4, 2012, Plaintiff acknowledged receipt of Defendant's Employee Guidebook. (ECF Nos. 36-2 at 3:5–14 & 65.) The Employee Guidebook contained a Harassment Free Workplace policy that provided the following detailed procedure for reporting harassment:

1. Report the alleged act immediately to his or her supervisor, Human Resources Manager, the senior manager on site, or the Division Human Resources Manager. This notification must be confirmed in writing including the date the complaint is submitted; the name(s) of the alleged violator(s) of this policy, and the name and signature of the person submitting the complaint. The person taking the complaint can assist in completing this step.

2. Steps will be taken to begin an immediate investigation. All complaints will be investigated in a timely and confidential manner.

3. If the investigation results in a reasonable belief that harassment has occurred, action designed to stop the harassment will be taken. Based upon the facts discovered in the investigation, appropriate action could include, but is not limited to, reassignment, transfer, reprimand, suspension, or other disciplinary action up to and including discharge. Non-employees who violate this policy risk the loss of visitor privileges.

(ECF No. 36-3 at 7.)

In October 2012, "McGraw hacked into Plaintiff's mobile telephone and sent threatening text messages to a woman Plaintiff had met in a bar." (ECF No. 57 at 11 (summarizing ECF No. 37-2 at 31).) "When Plaintiff confronted McGraw, he admitted to having hacked into the phone and having sent the emails, but he apologized and 'begged [Plaintiff] not to take this to human resources.'" (Id. (summarizing ECF No. 37-2 at 31).)

On April 9, 2013, McGraw gave Plaintiff a performance evaluation rating of P3 for the

period May 2012 to December 2012.[2]  (ECF No. 36-2 at 69.)  In the evaluation's manager comments section, McGraw provided the following observations:

> Justin is becoming a very valuable member of the team.  He has displayed leadership skills with owning the daily production schedule.  Justin needs to be more proactive when it comes to designing new parts.  Since he has been onboard, Justin has learned to process FDS/MF orders in addition to the skills needed to create special parts for the CMSC organization.  As discussed during several coaching sessions, Justin needs to focus on his productivity and his designing skills.  Justin has the potential to become the go-to person for MI generation.

Id.

On December 16, 2013, Plaintiff went to see Catoe and provided him with a written complaint (ECF No. 37-2 at 28–33) outlining Plaintiff's allegations of harassment by McGraw.[3] (ECF Nos. 36-2 at 23:10–24:2 & 36-3 at 1 ¶ 4.)  A few minutes later after his initial visit with Catoe, Plaintiff met with Catoe and Detra Mardis, Defendant's human resources manager, to discuss the McGraw situation.  (ECF No. 36-2 at 24:4–25.)  As a result of Plaintiff's complaint, McGraw was terminated on December 18, 2013, for violation of company policy.  (Id. at 25:13–

---

[2] P3 equated to the employee "Fully Demonstrating [an] understand[ing] of Eaton's high expectations and consistently demonstrate[ing] proficiency and effectiveness [and] [a]ctively work[ing] to further develop the skills and behaviors to "raise the bar" on their own performance."  (ECF No. 36-2 at 69.)

[3] Before his visit to Catoe, Plaintiff allegedly gave a copy of his complaint document to McGraw resulting in the following exchange between the two:

> Also, when Plaintiff decided to report McGraw's acts of sexual harassment, Plaintiff made three copies of the document that he had typed up. Plaintiff first went to McGraw's office and handed him one of the copies. McGraw read about the first paragraph and threw the document on his desk and said, "what the hell is this? I'm not reading this shit!" Plaintiff proceeded to explain to him that he intended to turn the other two copies into management. McGraw's reaction made Plaintiff fear impending physical violence. McGraw then told Plaintiff that if [he] turned them in he [McGraw] would sue Plaintiff. McGraw then said that if Eaton fired him he would make sure that McGraw got fired as well. He continued to threaten Plaintiff and said that he has a lot of connections and a lot of people that owe him 'favors' and Plaintiff would not last long before he would be fired by Eaton.

(ECF No. 40-3 at 4; see also ECF No. 36-2 at 43:3–7.)

15; see also ECF No. 36-3 at 1–2 ¶ 4.) After he made the complaint, Plaintiff did not experience any other sexual harassment during his employment with Defendant. (ECF No. 36-2 at 26:25–27:6.) Thereafter, on December 19, 2013, Mardis sent Plaintiff an advisory letter stating in large part as follows:

> We appreciate that you raised concerns regarding allegations of inappropriate behavior and communications of an Eaton manager. We take all concerns of this nature seriously, with appropriate action per Eaton's Code of Ethics and Values and Philosophy. A thorough internal investigation was conducted, and a resolution has been implemented based upon careful consideration of the facts.
>
> Through the course of the investigation, we identified several issues that we want to address with you to ensure you are clear on Eaton's Code of Ethics and Values and Philosophy, including your obligation as an Eaton employee should you be confronted with a similar situation in the future.

(ECF No. 40-7 at 2.)

Catoe began supervising Plaintiff after McGraw's termination. (ECF No. 36-4 at 2 ¶ 6.) On March 18, 2014, Catoe gave Plaintiff a performance evaluation rating of N3, or "needs improvement." (ECF No. 40-8 at 2.) "The three areas where Jones' performance were [sic] subpar was quality of production, quantity of production, and internal customer service." (ECF No. 36-4 at 2 ¶ 6.)

On or about May 1, 2014, Defendant selected La'Tonya Porter to replace McGraw as Technical Services Manager and moved Andrew Heilman to a Team Leader position operating as Plaintiff's direct supervisor. (ECF No. 36-3 at 2 ¶ 6.) On June 27, 2014, Catoe provided Plaintiff with a Letter of Concern (ECF No. 40-10 at 4–5) and Performance Improvement Plan (id. at 3) ("PIP") as a result of continuing performance problems. (ECF Nos. 36-3 at 2 ¶ 7 & 36-4 at 2 ¶ 7.) In response, Plaintiff raised concerns to Mardis that "Porter had a personal friendship with McGraw and that she was targeting him because Jones' complaint had led to McGraw's separation." (ECF No. 36-3 at 2 ¶ 7) As a result, Defendant removed Porter and Heilman from

5

further decisions regarding Plaintiff's PIP. (Id.)

On August 12, 2014, Mardis and Catoe terminated Plaintiff's employment because his "performance failed to improve despite the PIP objectives." (ECF No. 36-3 at 3 ¶ 9.) Porter was not involved in the decision to terminate Plaintiff, nor did she provide any input regarding it." (ECF No. 36-4 at 3 ¶ 9.)

On January 6, 2015, Plaintiff filed a Charge of Discrimination (the "Charge") with the United States Equal Employment Opportunity Commission. (ECF No. 37-2 at 26:23–27:20 & 34.) In the Charge, Plaintiff alleged that he suffered discrimination and retaliation in violation of Title VII and checked boxes for "Retaliation" and "Sex." (Id.) He stated the following particulars:

> I was employed by the above named employer since June 2011 and assigned as a Switchboard Technician. On or about June 27, 2014, I complained I was subjected to sexual harassment, by Kevin McGraw; Manager. After McGraw's discharge, I was placed on a Performance Improvement Plan (PIP) and subsequently discharged on August 12, 2014.
>
> Detra Mardis and Steve Catoe; Human Resources, told me I was discharged for failing to meet the PIP criteria however; I believe it is the result of my complaint of sexual harassment.
>
> I believe I have been discriminated against based on my sex (Male) and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 37-2 at 34.)

After receiving notice of the right to sue from the EEOC as to the Charge, Plaintiff filed a Complaint in the Sumter County (South Carolina) Court of Common Pleas on September 14, 2015, specifically alleging claims for gender discrimination by sexual harassment ("Count 1") and retaliation ("Count 2") in violation of Title VII. (ECF No. 1-1 at 9 ¶ 33–11 ¶ 50.) After removing the case to this court on October 15, 2015, Defendant on that same day also answered the Complaint, denying its allegations. (ECF No. 4.) On July 13, 2016, Defendant filed its

Motion for Summary Judgment and its Spoliation Motion. (ECF Nos. 36 & 37.) Plaintiff filed Responses to these Motions on August 1, 2016, to which Defendant filed Replies in Support on August 11, 2016. (ECF Nos. 39, 40, 44 & 45.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., the Magistrate Judge, after reviewing the parties' summary judgment briefs and considering their arguments, issued the aforementioned Report and Recommendation on February 9, 2017. (ECF No. 57.) On February 23, 2017, Plaintiff filed Objections to the Magistrate Judge's Report and Recommendation. (ECF No. 58.)

## II.   JURISDICTION

This court has jurisdiction over Plaintiff's Title VII claims via 28 U.S.C. § 1331, as they arise under a law of the United States, and also via 42 U.S.C. § 2000e–5(f)(3), which empowers district courts to hear claims "brought under" Title VII.

## III.   LEGAL STANDARD

A.   The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections[4] are filed, and reviews those portions which are not objected to - including those portions to which only "general and conclusory" objections have been made - for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198,

---

[4] An objection is specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." One Parcel of Real Prop. Known As 2121 E. 30th St., 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).

7

200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

B.      Summary Judgment under Rule 56

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party.  Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Anderson, 477 U.S. at 249.  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

## IV.   ANALYSIS

A.   The Report and Recommendation

At the outset of her Report, the Magistrate Judge stated several observations regarding the evidence presented by Plaintiff. First, the Magistrate Judge reviewed Plaintiff's December 16, 2013 "Harassment Complaint" (ECF No. 37-2 at 28–33) and found it appropriate for consideration herein in part based on the lack of an objection from Defendant. (ECF No. 57 at 4–5.) However, the Magistrate Judge did "not consider the portions of the submissions that would be inadmissible or that [we]re not made on personal knowledge." (Id. at 5.) Second, the Magistrate Judge considered Plaintiff's proffer of "the [A]ffidavit of Ricky Jerome Parrott, an Eaton employee who was Plaintiff's co-worker for about three years." (Id. at 5.) The Magistrate Judge determined that portions of Parrott's Affidavit either "lack foundation and are based on speculation" or "contain potentially inadmissible, speculative conclusory statements or evidence." (Id.)

*1. Retaliation*

In considering the merits of Plaintiff's retaliation claim, the Magistrate Judge found that the first two elements of a prima facie case of retaliation were satisfied because it is undisputed that "Plaintiff's December 16, 2013 report to Catoe and to HR concerning McGraw's harassment is protected activity or that his [Plaintiff's] termination is a materially adverse action." (ECF No. 57 at 20–21.) As to the additional adverse employment actions alleged by Plaintiff, the Magistrate Judge concluded that (1) the December 19, 2013 letter (ECF No. 40-7 at 2) from Mardis to Plaintiff was not an adverse action (ECF No. 57 at 22); (2) there is an issue of fact as to the extent to which any friendship between McGraw and Porter adversely affected Plaintiff (id. at 24–26); (3) "Plaintiff's claims of cold treatment and generally being managed by Catoe

9

and Porter are not materially adverse actions" (id. at 28); and (4) the June 27, 2014 Letter of Concern and the PIP were materially adverse actions. (Id. at 29.)

The Magistrate Judge then analyzed causality and found that "Plaintiff has provided just enough to meet his 'less onerous' burden of establishing prima facie causation" because "[a]rguably, a jury permitted to consider McGraw's threat to Plaintiff just before Plaintiff reported him, evidence of a friendship between Porter and McGraw, and Porter's at-least-partial involvement in Plaintiff's 2014 performance evaluations (the June 2014 Performance Letter) could draw a prima facie causal connection between the reporting and the adverse events, including termination." (ECF No. 57 at 30.) Therefore, upon her review, the Magistrate Judge found that Plaintiff could demonstrate a prima facie case of retaliation.

However, the Magistrate Judge next observed that Defendant could satisfy "its burden of setting forth a legitimate, nondiscriminatory reason for Plaintiff's reviews, PIP, and termination: his poor performance, including issues with productivity, quality of production, and follow-through with internal clients." (Id. at 32.) While at the same time, she observed that "Plaintiff could not provide "competent evidence from which a reasonable juror could conclude Plaintiff's performance issues raised were mere pretext for retaliatory action." (Id. at 35.) Accordingly, the Magistrate Judge recommended granting summary judgment to Defendant on Plaintiff's claim for retaliation. (Id.)

*2. Sexual Harassment*

The Magistrate Judge observed that Plaintiff's harassment claim was untimely because his "Charge was filed more than 300 days after December 16, 2013—the date Plaintiff complained to Defendant about McGraw's actions and what Defendant submits was the last act

10

of harassment." (ECF No. 57 at 37 (referencing ECF No. 36-2 at 26:25–27:6[5]).) Accordingly, the Magistrate Judge recommends granting summary judgment to Defendant as to Plaintiff's sexual harassment claim "because that claim was not timely presented to the EEOC." (Id. at 38.) However, if the merits of the harassment claim are considered, the Magistrate Judge observed that the claim still fails because Defendant is able to establish the Ellerth/Faragher affirmative defense[6] based on a showing that (1) "it exercised care to prevent and correct sexually harassing behavior" and (2) it was unable to prevent future conduct because Plaintiff failed "to report McGraw's conduct when it first occurred." (Id. at 43.) As a result, the Magistrate Judge recommends granting Defendant's Motion for Summary Judgment as to Plaintiff's harassment claim.

---

Q.  No. And after you made the complaint in December of 2013 about Mr. McGraw, you didn't experience any other sexual harassment while you were employed at Eaton, right?
A.  From, Kelvin, no.
Q.  Or from anybody.
A.  No. Not any harassment, uh-uh.

(ECF No. 36-2 at 26:25–27:6)

[6] The United States Court of Appeals for the Fourth Circuit has defined the affirmative defense of Faragher v. City of Boca Raton, 524 U.S. 775, 807–08 (1998), and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 764–65 (1998), as follows:

> The affirmative defense of Faragher and Ellerth allows an employer to avoid strict liability for a supervisor's sexual harassment of an employee if no tangible employment action was taken against the employee. See Faragher, 524 U.S. at 808, . . . ; Ellerth, 524 U.S. at 765 . . . . Examples of tangible employment action include "discharge, demotion, or undesirable reassignment." Faragher, 524 U.S. at 808, . . . ; Ellerth, 524 U.S. at 765, . . . . If entitled to raise the affirmative defense, the employer must establish: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807 . . . ; Ellerth, 524 U.S. at 765 . . . .

Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261 (4th Cir. 2001).

*3. Spoliation Motion*

The Magistrate Judge observes that should the court agree with the recommendation to grant Defendant summary judgment on the harassment claim, the Spoliation Motion should be denied as moot. (Id.) In the alternative, the Magistrate Judge recommends allowing further briefing of the issues in the Spoliation Motion if the court denies Defendant's Motion for Summary Judgment regarding the harassment claim. (Id.)

B.   Plaintiff's Objections

Plaintiff states both "general" and "specific" Objections to the Magistrate Judge's Report and Recommendation. Plaintiff generally objects

> to the Magistrate Judge's finding that summary judgment should be granted as to Plaintiff's sex discrimination claim under the Title VII. See Dkt. No. 57, pp. 35-43. Plaintiff objects to the R&R findings that Plaintiff's sex discrimination claim is untimely and that Defendant's Ellerth/Faragher defense is satisfied for the arguments already made by Plaintiff in pages 12 thru 17 of Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.

(ECF No. 58 at 12.)

In the first of his Specific Objections, Plaintiff argues that the Report and Recommendation is erroneous because the Magistrate Judge admittedly stated that she did not consider portions of Plaintiff's proffered evidence. (ECF No. 58 at 2 (citing ECF No. 57 at 5).) In this regard, Plaintiff complains that the Magistrate Judge discredited the testimony of Ricky Jerome Parrott "on the basis of lack of foundation, speculation, and suppositions." (Id. (citing ECF No. 57 at 5 & 27).) Plaintiff asserts that this was error because Parrott's Affidavit meets the foundational requirements of Federal Rule of Evidence 602 and his statements "are based on his personal knowledge from years of working for Defendant with Plaintiff, McGraw, and the other key witnesses in the case." (Id. at 3, 4.) Plaintiff also complains that the Magistrate Judge erroneously discredited Plaintiff's December 2013 complaint (ECF No. 37-2 at 28–33) to

Defendant's human resources on the basis that it was neither an affidavit nor signed by Plaintiff. (ECF No. 58 at 5 (citing ECF No. 57 at 4–6).)

In his second specific Objection, Plaintiff argues that the Magistrate Judge erroneously concluded "that the December 19, 2013 letter [that Plaintiff received] from [Defendant's] HR and hostile treatment and increased scrutiny as to Plaintiff's daily work performance under the supervision after McGraw [we]re not materially adverse employment actions." (Id. at 7.) In support of this argument, Plaintiff "asserts that the context of the letter was to rebuke Plaintiff, the victim of sexual harassment, after reporting McGraw's conduct." (Id.) Moreover, Plaintiff asserts that the treatment he received after McGraw's termination was very hostile as demonstrated by Parrott's testimony that he was worried Plaintiff "would lose his job based on my observations of how he [Plaintiff] was being treated by management and some of our co-workers." (Id. at 9 (quoting ECF No. 39-2 at 7 ¶ 37.)

Finally, in his third specific Objection, Plaintiff argues that even though she found that Plaintiff had demonstrated a prima facie case of Title VII retaliation, the Magistrate Judge erroneously recommended summary judgment for Defendant when there is a definite issue of fact regarding pretext. (See generally ECF No. 58 at 9–11.) In this regard, Plaintiff asserts that the jury should determine whether his "performance needed improvement" or whether he was meeting expectations until he engaged in his protected activity in December 2013. (Id. at 9–10.) Based on the foregoing, Plaintiff requested that the court deny Defendant's Motion for Summary Judgment. (Id. at 12.)

C.  The Court's Review

   *1. Plaintiff's General Objections*

The court observes that it is not required to provide de novo review of Plaintiff's general

complaints about the Report and Recommendation, but must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond, 416 F.3d at 315. At issue in Plaintiff's general objections is the Magistrate Judge's finding that Defendant was entitled to summary judgment because the Charge was untimely.

"Prior to pursuing a Title VII claim in federal court, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC." Hentosh v. Old Dominion Univ., 767 F.3d 413, 416 (4th Cir. 2014) (citing Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009)). "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Id. (quoting Jones, 551 F.3d at 300). "The plaintiff's filing with the EEOC must also be timely." Id. (citing 42 U.S.C. § 2000e-5(e)(1); EEOC v. Commercial Office Products Co., 486 U.S. 107, 110 (1988)). "If an individual fails to file an administrative charge with the EEOC within one hundred eighty (180) days after an alleged discriminatory act occurs (or three hundred (300) days if the aggrieved person presented the claim to a state deferral agency), then the EEOC charge is not considered timely filed." Id. (citing 42 U.S.C. § 2000e-5(e)(1); EEOC v. Commercial Office Products Co., 486 U.S. 107, 110 (1988)). "The failure to timely file an EEOC charge, however, does not deprive the district court of subject matter jurisdiction." Id. (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)). "The court retains discretion, therefore, to equitably toll the statutory deadline." Id. (citing Zipes, 455 U.S. at 393; Olson v. Mobil Oil Corp., 904 F.2d 198, 201 (4th Cir. 1990)).

Plaintiff testified that after he made the complaint on December 16, 2013, he did not experience any other sexual harassment during his employment with Defendant.[7] (ECF No. 36-2

---

[7] The Magistrate Judge notes that "Plaintiff argues [without providing specific dates] that McGraw continued to 'harass' Plaintiff after McGraw had been terminated. . . Plaintiff indicates

at 26:25–27:6.)  Plaintiff did not file his Charge until January 6, 2015.  (ECF No. 37-2 at 34.)  Therefore, the duration between the last occurrence of sexual harassment and the filing of the Charge was 387 days.  Moreover, Plaintiff offers no basis upon which the court could find that waiver, estoppel, or equitable tolling would cause his filing to be timely.  As a result, Plaintiff filed his Charge outside either the 180-day or the 300-day limitations period and the court agrees that Defendant is entitled to summary judgment as recommended by the Magistrate Judge.  E.g., Kelley v. Int'l Bhd. of Teamsters, Local Union 71, Civil Action No. 4:11-cv-1268-RBH, 2013 WL 6826906, at *3 (D.S.C. Dec. 23, 2013) ("The EEOC charge was filed more than 300 days . . . and is therefore untimely.  As a result, summary judgment is appropriate and the Court need not address the merits of Plaintiff's claim.").  Accordingly, the court finds that the Report and Recommendation does not contain clear error and overrules Plaintiff's general Objections.

2. *Plaintiff's Specific Objections*

Plaintiff's first specific Objection advocates that the Magistrate Judge improperly discredited the evidence provided in his December 2013 complaint and the Affidavit of Ricky Jerome Parrott.  (ECF No. 58 at 2–5.)  The court observes that if the Magistrate Judge had engaged in weighing evidence to arrive at her recommendation as Plaintiff suggests, she would have committed error.  See, e.g., Cartinelle v. Napolitano, C/A No. 08-cv-2223-WJM-BNB, 2011 WL 2610189, at *7 (D. Colo. July 1, 2011) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986) (stating that "at the summary judgment stage the judge's function is not himself to weigh the evidence"); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (a court "may not make credibility determinations or weigh the evidence" in resolving a motion for summary judgment)).  However, because the Magistrate Judge only failed to "consider the

---

he advised Defendant of this and was told Defendant could not do anything about it because McGraw no longer worked for Defendant."  (ECF No. 57 at 13 n.13.)

15

portions of the submissions that would be inadmissible or that [we]re not made on personal knowledge, the court finds she did not commit error. E.g., Cartinelle, 2011 WL 2610189, at *7 ("Because much of Plaintiff's evidence is either not properly cited to or is inadmissible, the Magistrate Judge rightly did not consider it.").

Plaintiff's second specific Objection suggests that the Magistrate Judge did not give him credit for all the adverse employment actions that Plaintiff suffered. "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004). "Typical examples of adverse employment actions include 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'" Sancho v. Anderson Sch. Dist. Four, (D.S.C. Aug. 3, 2016) (quoting Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999)). The court reviewed Detra Mardis' December 19, 2013 letter and finds that its contents cannot be equated with the foregoing types of actions that are considered to be adverse. As to the treatment Plaintiff alleges that he received after McGraw's termination, the Magistrate Judge effectively explained her reasons for concluding that "snubbing by supervisors and co-workers" is not an actionable materially adverse event. (ECF No. 57 at 28 (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."); Shannon v. Va. Dep't of Juvenile Justice, C/A No. 3:06CV413, 2007 WL 1071973, at *4 (E.D. Va. Apr. 4, 2007)).) As a result of the foregoing, the court is not persuaded that Plaintiff's Objection regarding other adverse employment events has merit.

Plaintiff's third and final specific Objection disagrees with the Magistrate Judge's conclusion that Plaintiff failed to demonstrate pretext. "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Anderson v. Ziehm Imaging, Inc., C/A No. 7:09-02574-JMC, 2011 WL 1374794, at *5 (D.S.C. Apr. 12, 2011) (citing Stewart v. Henderson, 207 F.3d 374, 376 (7th Cir. 2000)). "The ultimate question is whether the employer intentionally discriminated and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's] proffered reason . . . is correct . . . [i]t is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000)) (internal citations omitted). Rather, Plaintiff must demonstrate that a reasonable jury could believe him. Id.

Upon consideration of the merits of Plaintiff's third Objection, the court observes that Plaintiff's pretext argument fails because even if the court views the evidence in the light most favorable to him, Plaintiff's evidence does not suggest any pretextual motivation on the part of Catoe and Mardis to retaliate against Plaintiff when they made the decision to terminate his employment (ECF No. 36-3 at 3 ¶ 9). See Holland v. Wash. Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007) (holding that the plaintiff failed to show pretext where "the uncontested evidence established that . . . the decisionmaker . . . honestly believed that [the plaintiff] deserved to be discharged for threatening [another employee], regardless of whether [the plaintiff] did in fact issue the threats"); Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444 (4th Cir.1998) (affirming the grant of summary judgment where the plaintiff presented "no evidence that the events recounted in the [decisionmaker's] affidavit [were] untrue or that retaliation was the true reason for [plaintiff's] firing," and explaining that the "uncontested evidence establishe[d] that

[the decisionmaker] honestly believed that [plaintiff] deserved to be discharged"). In fact, the evidence suggests otherwise. Catoe and Mardis were receptive of Plaintiff's complaint regarding McGraw, immediately investigated the allegations, and made the eventual decision to terminate McGraw's employment. Moreover, Catoe and Mardis each had a role in trying to help Plaintiff achieve the objectives of the PIP to maintain his employment. (ECF Nos. 36-3 at 2 ¶ 7 & 36-4 at 2 ¶ 7.) Therefore, because Plaintiff is unable to demonstrate pretext, the court agrees with the Magistrate Judge's recommendation that summary judgment is appropriate as to Plaintiff's retaliation claim. (ECF No. 57 at 35.)

## V.     CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the Motion for Summary Judgment (ECF No. 36) of Defendant Eaton Corporation. As a result, the court **DENIES AS MOOT** Defendant's Motion to Dismiss for Spoliation of Evidence, or alternatively, for Other Appropriate Sanctions (ECF No. 37).

The court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 57) and incorporates it herein by reference.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 31, 2017
Columbia, South Carolina